**NONPRECEDENTIAL DISPOSITION**
To be cited only in accordance with
Fed. R. App. P. 32.1

# United States Court of Appeals

**For the Seventh Circuit
Chicago, Illinois 60604**

Submitted March 24, 2010
Decided March 31, 2010

**Before**

FRANK H. EASTERBROOK, *Chief Judge*

ANN CLAIRE WILLIAMS, *Circuit Judge*

JOHN DANIEL TINDER, *Circuit Judge*

No. 09-2536

| | |
|---|---|
| UNITED STATES OF AMERICA, *Plaintiff-Appellee,* | Appeal from the United States District Court for the Northern District of Illinois, Eastern Division. |
| *v.* | No. 06 CR 385 - 3 |
| RAFAEL PARRILLA, *Defendant-Appellant.* | John W. Darrah, *Judge.* |

**O R D E R**

Rafael Parrilla pleaded guilty to conspiracy to possess methamphetamine with intent to distribute and was sentenced to 59 months' imprisonment. He filed a notice of appeal, but his appointed lawyer moves to withdraw on the ground that the appeal is frivolous. *See Anders v. California*, 386 U.S. 738 (1967). Parrilla has not responded to counsel's motion. *See* CIR. R. 51(b). We limit our review to the potential issues identified in

counsel's facially adequate brief.  *See United States v. Cano-Rodriguez*, 552 F.3d 637, 638 (7th Cir. 2009).

Parrilla, along with Alma Matias and two other Chicago residents, arranged for a source in Nevada to ship them methamphetamine.  They were caught after the second shipment and charged with conspiracy and one substantive count of possession with intent to distribute.  *See* 21 U.S.C. §§ 846, 841(a)(1).  Parrilla entered into a plea agreement and promised to cooperate with the government's investigation of Humberto Espina, the purported Nevada source, in exchange for dismissal of the substantive count and a specific sentence below the guidelines imprisonment range.  *See* FED. R. CRIM. P. 11(c)(1)(C).

Parrilla testified before a grand jury and recounted a trip he and Matias made to Las Vegas to buy drugs.  According to Parrilla, Espina sold him an "8-ball" of methamphetamine during the trip and procured a small amount of methamphetamine for Matias.  Parrilla also said that he, Matias, and Espina discussed Espina supplying them drugs in the future.  Finally, Parrilla stated that Espina later sent several packages of methamphetamine, including the package that was intercepted by authorities and led to the co-conspirators' arrest, to Matias.  In part on this basis, the government secured an indictment against Espina.

But Parrilla lied to investigators and to the grand jury about the identity of the co-conspirators' source in Nevada.  Forensic evidence linked not Espina, but an associate named Nomar Fidel Castro to the shipped package.  After his grand jury testimony, Parrilla changed his story several times, first disclaiming personal knowledge about who obtained the drugs for Matias during the Las Vegas trip or sent the package to her in Chicago but later claiming that Castro (and not Espina) was the source.  In later proffers, Parrilla also recanted his testimony that he, Matias, and Espina had discussed Espina providing them drugs in the future and his testimony that he bought an "8-ball" from Espina while in Las Vegas.

As a result of these discrepancies, the government dropped its pending charges against Espina, citing Parrilla's unreliability as a government witness, and later moved to void Parrilla's guilty plea and plea agreement, attaching as evidence Parrilla's grand jury testimony.  The district court held a hearing on the government's motion.  The government did not call any witnesses, but stood on its motion after brief argument.  Parrilla did not request an evidentiary hearing; instead, he argued that he had always been truthful with the government and that the discrepancies the government identified were the result of the government's focus on Espina and not Castro.  The district court granted the government's motion, and Parrilla later pleaded guilty again to the conspiracy charge, this time without any consideration from the government.  The probation officer interviewed an agent who

met with Parrilla during his proffers and included his comments in the presentence report. The agent stated that Parrilla initially claimed personal knowledge of Matias' dealings with Espina both in Las Vegas and later in Chicago. He also stated that Parrilla failed to tell the government that Matias was communicating with Castro rather than Espina regarding the drug shipments. Parrilla did not object to the inclusion of the agent's statements in the presentence report. The guidelines imprisonment range was 97 to 121 months, but, in selecting a term of 59 months (1 month below the statutory minimum), the district court gave Parrilla 38 months' credit for time served on a discharged federal sentence in a related case. *See* U.S.S.G §§ 5G1.3 cmt n.4, 5K2.23.

Parrilla has not indicated that he wishes to challenge his guilty plea, and so counsel appropriately refrains from discussing the voluntariness of the plea or the adequacy of the plea colloquy. *See United States v. Knox*, 287 F.3d 667, 670–72 (7th Cir. 2002). Counsel instead identifies only one potential issue for appeal: whether Parrilla could argue that he did not violate the terms of his plea bargain and thus it was error to grant the government's motion to void the agreement. But plea agreements function as contracts, *United States v. Kelly*, 337 F.3d 897, 901 (7th Cir. 2003); *United States v. Lezine*, 166 F.3d 895, 901 (7th Cir. 1999), and a defendant's substantial breach frees the government to void the deal, *Kelly,* 337 F.3d at 901. The government need only prove a substantial breach by a preponderance of the evidence to prevail on such a motion. *See Kelly*, 337 F.3d 897; *United States v. Frazier*, 213 F.3d 409, 419 (7th Cir. 2000).

Counsel is correct that any argument that the district court erred by invalidating the plea agreement would be frivolous. The district court's decision was not clear error; the chronology of events establishes that Parrilla was not—as required by the plea agreement—completely truthful with the government. In its motion to vacate the plea and the subsequent hearing, the government argued that, during proffers made after forensic evidence belied Parrilla's grand jury testimony against Espina, Parrilla's story about who supplied the methamphetamine to Matias changed several times, shifting in focus from Espina to Castro. Parrilla's plea agreement required him to provide "complete and truthful information" in cooperating but his shifting stories undermined his usefulness as a witness. As a result, the government determined that it could no longer bring charges against either Espina or Castro. Though a disputed allegation of substantial breach generally can be resolved only by holding an evidentiary hearing, *see Frazier*, 213 F.3d at 419, Parrilla acquiesced to the district court's consideration of the government's motion on briefing and argument and did not request a full evidentiary hearing, choosing instead to argue that the government's account was not inconsistent with his own. He cannot now object to the manner in which the district court considered the evidence. *See United States v. Ervin*, 540 F.3d 623, 630-31 (7th Cir. 2008).

We also note that Parrilla received a sentence shorter than the 60-month minimum he should have received in light of *United States v. Cruz*, 595 F.3d 744, 746-47 (7th Cir. 2010). That case holds that, although a sentencing court may reduce a defendant's sentence based on time a defendant has served on a related, discharged prison sentence, *see* U.S.S.G. § 5K2.23, the court may not in so doing reduce the later sentence below a statutory minimum. *Cruz*, 595 F.3d at 746-47. But the government did not file a cross-appeal on that issue, and so we leave Parrilla's sentence undisturbed.

Accordingly, we **GRANT** counsel's motion to withdraw and **DISMISS** the appeal.